People v Gonzalez (2025 NY Slip Op 51064(U))

[*1]

People v Gonzalez

2025 NY Slip Op 51064(U)

Decided on July 2, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 2, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Demaris Gonzalez, Defendant.

Docket No. CR-030159-24BX

For the Defendant: The Bronx Defenders
(by: Kaya Lawrence, Esq.)
For the People:
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Daniel Beloosesky)

Deidra R. Moore, J.

On November 25, 2024, Demaris Gonzalez (hereinafter referred to as "Defendant"), was arrested and charged with Penal Law ("P.L.") § 120.00[1], a class A misdemeanor, and related charges. The Defendant was arraigned the next day and released on her own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution has not exercised due diligence to disclose all discoverable materials prior to filing the certificate of compliance. Therefore, Defendant's motion is GRANTED.[FN1]
RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On November 25, 2024, the Defendant was arrested on charges of P.L. § 120.00[1], assault in the 3rd degree, and related charges. The charges stemmed from an incident which had occurred and been reported via 911 call on October 3, 2024. On November 25, 2024, the Defendant was arraigned, and the case was adjourned to January 21, 2025, for conversion and discovery compliance.
On January 21, 2025, the prosecution was not converted or discovery compliant. The [*2]case was adjourned to March 5, 2025, for the People to file a supporting deposition, certificate of compliance and statement of readiness. On February 13, 2025, the People filed, off-calendar, a superseding information to convert the case. On February 24, 2025, the prosecution filed and served, off-calendar, a certificate of compliance ("COC"), and statement of readiness ("SOR"). The COC noted that 911 materials remained outstanding.
On March 5, 2025, the parties appeared in Part AP4. The complaint was deemed an information, and the case was adjourned to April 1, 2025, for discovery conference.
In the interim, the prosecution disclosed additional discovery. On March 20, 2025, the prosecution shared 911 materials, including the recording of the 911 call, and the body-worn camera footage from the two responding officers. On March 21, 2025, the People disclosed the memo book of one of the two responding officers and filed a supplemental certificate of compliance ("SCOC"). On March 26, 2025, the People shared two police reports with the defense, the roll call log and the WINQ report. On March 28, 2025, the prosecution shared a photo of the defendant obtained from a detective on the case. On April 1, 2025, the prosecution disclosed an Aided Report and three photographs taken at the scene by one of the responding officers.
At the discovery conference on April 1, 2025, defense counsel objected to the validity of the COC, and the instant motion schedule was set. By motion dated April 28, 2025, Defendant moved to strike the COC and demanded dismissal of the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], as the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on May 29, 2025;[FN2]
the defense reply followed on June 5, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is an A misdemeanor (C.P.L. § 30.30[1][b] and P.L. § 120.00[1]).
The speedy trial clock begins to run with the commencement of the criminal action—here, the filing of the accusatory instrument on November 25, 2024 (C.P.L. § 1.20[17]; People v. Smietana, 98 NY2d 336, 340 [2002]). The speedy trial clock is tolled when the People file and serve a valid certificate of discovery compliance and statement of readiness for trial (C.P.L. §§ 245.50[3] and 30.30[5]). A valid statement of readiness certifies that the People "have done all that is required of them to bring the case to a point where it may be tried" (People v Englund, 84 NY2d 1, 4 [1994]. A valid statement of readiness should communicate a present state of readiness, "not a prediction or expectation of future readiness" (People v Kendzia, 64 NY2d 331, 337 [1985]).
The People must fulfill their discovery obligations pursuant to C.P.L. Article 245 before they may be deemed ready for trial. The prosecution must automatically disclose to the defense "all items and information which relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L. §§ 245.20[1]). Discoverable items possessed by "any New York state or local [*3]police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). The prosecution must provide all discoverable material to the defense except that which has been lost or destroyed (C.P.L. § 245.80) or is the subject of a protective order (C.P.L. § 245.70[1]).
After the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly declare their readiness for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. § 245.50[3]).
The defense is required to notify the prosecution regarding "any potential defect or deficiency" with the certificate of compliance "as soon as practicable" (C.P.L. § 245.50[4][b]). The Defendant may not "wait while the speedy trial clock ticks loudly in the background" before informing the People of missing or incomplete discovery (People v. Ramirez, 75 Misc 3d 931, 935, [Crim Ct, Kings County 2022]).
When the defense disputes the validity of a certificate of compliance, the burden is on the prosecution to show "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC" (People v Bay, 41 NY3d 200, 213 [2023]). In People v. Bay, the Court of Appeals laid out a non-exhaustive list of factors to consider when assessing diligence, including the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (id. at 212).

DISCUSSION
I. The Parties' Arguments
A. The Missing Items
The defense moves to invalidate the COC based on multiple items which were allegedly belatedly shared or which remain outstanding. First, Defendant asserts that the 911 materials and body-worn camera ("BWC") footage from responding officers were belatedly disclosed (citing C.P.L. § 245.20[1][g], which requires automatic disclosure of "[a]ll tapes or other electronic recordings" in the People's possession that "relate to the subject matter of the case"). Second, Defendant contends the prosecution belatedly disclosed three photographs taken at the scene by a responding officer (citing C.P.L. § 245.20[1][h], which directs automatic disclosure of "[a]ll photographs or drawings made or completed by a public servant engaged in law enforcement activity"). Third, Defendant asserts that the people did not disclose adequate contact information for the complaining witness (citing C.P.L. § 245.20[1][c], which directs the People to disclose "the names and adequate contact information for all persons other than law enforcement [*4]personnel whom the prosecutor knows to have information relevant to any offense charged").[FN3]
Fourth, Defendant asserts that multiple police reports were not timely shared or remain outstanding, including one officer's memo book, the WINQ report, the scratch complaint report, the roll call logs, the command log, the Entity Report, and the Aided Report (citing C.P.L. § 245.20[1][e], which requires disclosure of, among other things, "all police reports, notes of police and other investigators, and law enforcement agency reports"). Finally, the defense contends that the prosecution did not timely share impeachment material for a testifying witness, Officer Rojas, as required by C.P.L. § 245.20[1][k][iv].
A. The People's Argument
The People assert that they exercised due diligence prior to the COC's filing, noting that "the majority" of discoverable materials were shared with the defense prior to the COC's filing, including "a 17-page arrest packet; complaint report; arraignment card; 53 pages of medical records; ECMS investigation files, consisting of 38 files documenting investigative work taken, and four object files consisting of Entity-Detailed Reports for the complainant and defendant, a copy of the initial accusatory instrument, and a photo of the defendant used in a single photo ID procedure" (People's Opposition at 37).
The People detail their efforts to obtain discoverable information and contend that these efforts constitute the requisite due diligence. The People note that, on February 3, 2025, they sent a request for discovery related to the case to personnel at the 48th precinct. On this date, the People made a separate request for the 911 materials. On February 13, 20, 22 and 23, 2025, the prosecution sent follow-up e-mails to "the 48th precinct" (People's Opposition at 4). Beginning on February 20, 2025, the prosecution carbon copied PO Janycaly Rojas on the e-mail requests for discovery, as she was listed in arrest paperwork as the responding officer (id.). The People point out that they left voicemails for the discovery liaisons at the 48th precinct on February 21, 2025, and sent text messages to these liaisons, as well as to Officer Rojas, on February 22, 2025. On February 23, 2025, the People checked the status of their request for 911 materials and found that they had not yet been furnished.
The People contend that they did not wait too long before beginning to compile discovery in the case, as "[i]n many instances, one email request can lead to a prompt production within only a few days" (People's Opposition at 4). The People state that the belated disclosures in the case were caused not by a lack of due diligence, but by "production delays by the 48th precinct" (People's Opposition at 10).
B. The Defendant's Argument
The Defense argues that the prosecution did not exercise due diligence prior to filing the certificate of compliance, dated February 24, 2025. The defense notes that, at the time of the COC's filing, the People had not disclosed key materials, including the 911 call, the BWC of the [*5]two responding officers (the only camera footage that exists in the case), photographs taken by a responding officer at the scene, and multiple police reports. Further, Defendant did not receive the 911 materials or BWC footage until March 21, 2025, 25 days after the filing of the COC, and continued to receive discovery items on multiple subsequent occasions, up until April 1, 2025, 36 days after the filing of the COC.
Defendant asserts that the efforts recounted by the prosecution to obtain discoverable information do not constitute due diligence. Defendant first asserts that the prosecution waited until too much of their allotted speedy trial time had expired before making any efforts whatsoever and thus could not obtain and share the materials in time. The prosecution first e-mailed a general discovery request to the 48th precinct's discovery liaison on February 3, 2025, the 70th chargeable day in the case; on the same day, the prosecution separately made a request for 911 materials. Defendant notes that the prosecution did not follow up to see if the 911 request had been processed or the materials produced until February 23, 2025, the 89th chargeable day in the case, and the day before the prosecution filed its certificate of compliance. At this time, when the prosecution learned that the 911 materials had not yet been produced, it was too late for the People to obtain and share them prior to the expiration of the speedy trial clock.
Defendant further emphasizes that the prosecution's discovery efforts consisted primarily of re-sending a general discovery request to the same unresponsive parties who had not produced the missing materials, and that no contact was attempted with the responding officer—listed clearly in other paperwork as the responding officer—until the 87th chargeable day. Because the prosecution waited so long to attempt to obtain the materials, and did not make targeted or diligent efforts to follow up on their discovery requests, they could not obtain key items before the speedy trial clock expired. As a result, the prosecution filed a "placeholder" COC to stop the speedy trial clock, while they obtained the outstanding material in a piecemeal manner.
II. The Court's Analysis
A. The February 24, 2025, Certificate of Compliance
When the People filed the February 24, 2025, COC, numerous key items—perhaps the most crucial items in the case—had not been disclosed. Most notably, the prosecution filed their COC—and declared their readiness for trial—without having obtained, reviewed, or shared the 911 call, the body-worn camera footage from the two responding officers, or photographs taken at the scene by a responding officer. Multiple other items remained outstanding when the COC was filed, including, among other items, the Aided Report and a responding officer's memo book.
The People's COC explicitly acknowledged that the 911 materials remained outstanding. However, this acknowledgement alone does not render the COC valid in the absence of disclosure of the materials themselves, particularly since the efforts described in the COC do not demonstrate due diligence to obtain the 911 materials prior to filing. The February 24, 2025, COC states, with regard to the 911 materials, "The People requested 911 materials on February 3, 2025 (2025/013657) and received a job status of "Sent" when attempting to download the materials on February 23, 2025. The People will promptly share any 911 materials via OneDrive once they become available" (People's Opposition Exhibit 1 at 2).
The Court cannot find that the People's efforts, consisting of one automated request for the materials, and no checkup on the status of the materials until the 89th chargeable day, were diligent. While the Court agrees with the People's assertion that "it is not the court's role to pick and choose among the various options in performing due diligence" (People's Opposition at 7, citing People v King-Knight, CR-024796-23BX, Bondy, J., Crim Ct, Bronx County, April 19, 2024), this assertion is premised on the actual exercise of such diligence. The prosecution here did not follow up on their sole request for the 911 materials, including the recording of the 911 call itself, until the 89th chargeable day. When the prosecution found the 911 materials were not yet available, there was no remaining time to remedy the issue before the expiration of the speedy trial clock.
Furthermore, the only body-worn camera footage in the case, belonging to the two officers who responded to the scene, Officer Rojas and Officer Magwood, remained outstanding when the COC was filed. The People concede that they had reason to know that footage, at least from Officer Rojas, existed; the Omniform Complaint, filled out by Officer Rojas and dated October 3, 2024, has a box labeled "Officer Body Worn Camera" with "YES" typed inside it (People's Opposition at 14 and Exhibit 13). Confusingly, the People also state, seemingly to the contrary, that they had no reason to know this footage existed, as the Body Worn Camera Checklist they disclosed with other discovery bore the date of the Defendant's arrest, rather than the date of the incident, and this document indicated that no footage existed for the date of arrest.[FN4]
Moreover, the People contend, when Officer Rojas responded to the assigned prosecutor via e-mail on the 89th chargeable day by sending her memo book, but not her BWC footage, the assigned prosecutor took this as an indication—without asking or conducting further follow up—that there was no BWC from Officer Rojas in the case.
The prosecution argues that they did not know that the vast majority of the belatedly disclosed items existed when they filed the COC. The People contend that, because they certified trial readiness without having obtained or viewed Officer Rojas's body-worn camera footage, they did not know that Officer Magwood had been a responding officer at the scene; consequently, they failed to disclose Officer Magwood's body-worn camera footage and memo book. The People further contend that, because they had not seen Officer Rojas's BWC footage, they did not know that she had taken photographs at the scene, or that an Aided Report had been generated, or that she would need to be called as a witness, thus requiring disclosure of impeachment material.
The People's argument here is unpersuasive, as the Court finds that a diligent prosecutor would not certify discovery compliance and trial readiness without having reviewed body-worn camera footage from the only officer known to have responded to a 911 call. The BWC footage of a responding officer often depicts essential events, particularly when a complaining witness is [*6]involved. This footage would likely show a complainant's demeanor, appearance, and actions directly after the alleged incident. This footage could contain the first statement from a complainant, and show any investigative actions taken by officers at the scene. A diligent prosecutor, having reviewed other items of discovery in this case, would have known about and made robust efforts to obtain this footage. Not only was the footage clearly referenced in other discoverable materials, the NYPD Patrol Guide mandates the wearing of body-worn camera when responding to emergency calls (NYPD Patrol Guide, Procedure No 212-123, available online at www.nyc.gov/site/nypd/about/about-nypd/manual.page, last visited July 1, 2025). That the prosecutor here ultimately decided this footage did not exist—without speaking to the responding officer or replying to her e-mail to explicitly ask about the footage—demonstrates a lack of due diligence and a failure to make reasonable inquiries to obtain clearly discoverable material.
B. The March 21, 2025, Supplemental Certificate of Compliance
When the prosecution filed the March 21, 2025, SCOC, automatically discoverable items remained outstanding, including photographs taken at the scene by Officer Rojas and the Aided Report, which were not disclosed until April 1, 2025. These items were in the prosecution's imputed possession pursuant to C.P.L. § 245.20[2].
C. Flow of Information between Law Enforcement and the District Attorney
In this matter, the People assert that the NYPD caused the delayed disclosures. The People argue that the belated disclosures do not "reflect[] a lack of due diligence," but rather a "production delay, solely attributable to the 48th precinct" (People's Opposition at 4). Setting aside the fact that the prosecution here did not begin to gather discovery until the majority of its speedy trial time had elapsed, C.P.L. § 245.55[1] mandates a flow of information between law enforcement and district attorneys' offices. C.P.L. § 245.55[1] states that "[t]he district attorney and the assistant responsible for the case. . . shall endeavor to ensure that a flow of information is maintained between the police and other investigative personnel and his or her office sufficient to place within his or her possession or control all material and information pertinent to the defendant and the offense or offenses charged." C.P.L. § 245.55[2] directs "each New York state and local law enforcement agency [to] make available to the prosecution a complete copy of its complete records and files related to the investigation of the case or the prosecution of the defendant for compliance with this article."
Not only does C.P.L. § 245.55 mandate a flow of information between NYPD and the district attorneys' offices, C.P.L. § 245.20[2] makes clear that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." As the discoverable items at issue were in the prosecution's imputed possession, the People's assertion that NYPD production delays caused the belated disclosure does not rescue the COC (People v Jackson, 79 Misc 3d 832, 839 [Crim Ct, NY County 2023] ["The People's failure to disclose material expressly deemed to be in their possession undermined their ability to file a valid COC."]). Moreover, as this Court has previously noted, the prosecution has multiple tools at its disposal when faced with obstacles to the flow of information required by C.P.L. § 245.55, [*7]including requesting an extension of their discovery deadline pursuant to C.P.L. § 245.70[2], or asking the Court to sign a so-ordered subpoena (People v Santos, 86 Misc 3d 1203(A) [Crim Ct, Bronx County, 2025]).
D. Due Diligence and the Bay Factors
A court considering the People's diligence should consider, among other factors, the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (People v Bay, 41 NY3d 200, 212 [2023]). While there is no rule of "strict liability" requiring the invalidation of a COC when discovery items are missing or belatedly disclosed, "the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence" (id. at 211).
Here, the Court cannot find that the People exercised due diligence to fulfill their discovery obligations prior to filing the COC. Although some discoverable material was disclosed prior to the COC's filing, multiple, essential items remained outstanding. The discovery was neither particularly voluminous nor complex, although the prosecution equivocates on whether confusion was caused by the fact that the incident date and the arrest date were not the same.
The prosecution's earliest effort to obtain discovery in the case was February 3, 2025, the 70th chargeable day of the prosecution's statutorily allotted ninety-day period. While the prosecution notes that Bay does not "set[] a specific timeline" for requesting discovery (People's Opposition at 7), the combination of C.P.L. §§ 245.50[3] and 30.30 does set a deadline for the filing of a proper COC. The prosecution here asserts that they may begin to gather discovery at any time within their statutorily allotted speedy trial period but then shifts blame for discovery delays to the NYPD. The People cannot have it both ways; if the People want to begin discovery gathering so late in the day, they cannot then assign fault to the NYPD when the materials are not obtained before the speedy trial clock runs (People v Lithgow, 86 Misc 3d 295, 306 [Crim Ct, NY County 2024] [finding that due diligence requires "the People [to] demonstrate that they requested the material from the police. . .early enough in the proceeding that they will be able to disclose the material to the defense before their speedy trial time expires"]). Further, if the People contend that their discovery gathering may commence well into their allotted speedy trial time, their efforts should be more robust than sending and re-sending e-mails, in quick succession, to the same unresponsive parties (People v Hopkins, 85 Misc 3d 1284(A) [Crim Ct, Bronx County] ["It wasn't until [the People] tried the reasonable, logical step of talking to their own witnesses that they were able to obtain and share the missing discovery"]).
Here, after making a boilerplate request for 911 materials, the prosecution did not follow up on this request until the 89th chargeable day, the metaphorical eleventh hour. The prosecution similarly failed to make timely or robust efforts to obtain Officer Rojas's BWC footage—evidence that indicated the existence of multiple other outstanding items. Due diligence in the discovery context requires the People to review the evidence in their possession (People v Martinez, 229 NYS 3d 329, 332 [Sup Ct, Kings County 2025] ["[r]eview of the evidence for completeness is a reasonable step in the People's inquiry to determine if additional [*8]discovery exists"]; People v Edwards, 77 Misc 3d 740, 748, [Crim Ct, Bronx County 2022] ["[f]ailing to actually review the evidence that was disclosed or to speak directly with the officers involved in this case" demonstrated a lack of due diligence]). Had the People exercised due diligence to either speak with Officer Rojas or to obtain and review her body-camera footage—footage that was clearly referred to in other discoverable materials—they would have realized that a plethora of discovery remained outstanding, including Officer Magwood's BWC footage and memo book, photographs taken by Officer Rojas at the scene, the Aided Report, and impeachment material for Officer Rojas.
It is the People's obligation to exercise due diligence and make reasonable inquiries to ascertain the existence of and share discoverable material, and this responsibility cannot be shifted to the police (see People v Martinez, 229 NYS 3d 329, 332 [Sup Ct, Kings County 2025] ["Our discovery statute describes a proactive prosecutor making reasonable inquiries, not a courier blindly rubber-stamping delivery from the police to the defendant."]). Moreover, Article 245 was enacted "specifically to eliminate 'trial by ambush' and to remedy . . . inequities by mandating earlier and broader discovery obligations by the prosecution, increasing efficiency in prosecutions and fairness to both sides" (People v Godfred, 77 Misc 3d 1119, 1124 [Crim Ct, Bronx County 2022]). The prosecution here certified their trial readiness without having disclosed multiple essential and routinely shared items of discovery, and their actions here are antithetical to Article 245's fundamental purpose.
The Court finds the People's February 24, 2025, COC and March 21, 2025, SCOC were invalid, and their accompanying statements of readiness illusory (People v Bay, 41 NY3d 200, 204 [2023]).

THE CPL § 30.30 CALCULATION
The first day counted for speedy-trial purposes is November 26, 2024, the day following the commencement of the criminal action (People v Stiles, 70 NY2d 765, 767 [1987]]. The prosecution filed and served a COC on February 24, 2025, and an SCOC on March 21, 2025. However, as discussed supra, the COC and SCOC were invalid and failed to toll the speedy trial clock. The speedy trial clock was tolled on April 1, 2025, when the instant motion schedule was set (November 26, 2024 — April 1, 2025 = 127 days charged). Accordingly, 127 days are chargeable to the People, and their ninety-day speedy trial period has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: July 2, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:Defendant also moves for multiple pre-trial hearings. As the Court's decision on Defendant's motion to dismiss pursuant to C.P.L. §§ 245.[4][c], 30.30[1][b], and 170.30[1][e] is dispositive, the remaining pre-trial issues are moot.

Footnote 2:The prosecution also filed a second supplemental certificate of compliance on May 26, 2025.

Footnote 3:The Court credits the prosecution's assertion that the complainant's phone number was visible on multiple police reports shared with the Defendant prior to the filing of the COC (People's Opposition at 29), and thus does not consider this a missing or belatedly disclosed item.

Footnote 4:The SCOC states, "[g]iven that the BWC checklist in this case was from the arrest date of November 25, 2024, rather than from the incident date of October 3, 2024, and given that the checklist recorded that there was no BWC footage, we had no basis to know of other officers who responded on October 3, 2024, nor that BWC footage existed. Based on receipt of the memo books from Officer Rojas on February 22, 2025, but without any BWC footage having been provided, despite our request, we believed that we had received all discovery, except for the pending 911 files." (People's Opposition Exhibit 2 at 3).